United States v. Morehouse. And Ms. Bitterman, I'm not sure how you pronounce it. All right, we'll hear from you when you're ready. Thank you. Good morning, Judges Niemeyer, Nguyen, and Floyd, and may it please the Court. I am Donna Bitterman, and I represent the U.S. Army. Mr. Morehouse is a 10-year veteran of the U.S. Army who is educated, married, and a devoted father who had absolutely no criminal record at all until his arrest in this case. After his second deployment to Afghanistan, where he regularly witnessed all sorts of terrible things, including firsthand mortar attacks, trauma to Army service people, and the deaths of service members, he suffered from PTSD, anxiety, insomnia, nightmare, depression, flashbacks, and psychophysiological symptoms. So, we got a couple of issues in this case, and all that you're saying is relevant, and I feel for, in terms of the military service, having dealt with these kind of cases, which seems like the number of disproportionate military personnel to be dealing with whether this two-point enhancement is appropriate and whether the five-point enhancement is appropriate. Correct. I would think that you probably would move to the five because that two level, at least to me, looks like you waived that one. But you can argue otherwise. I don't believe we waived it, but I would like to start with the five-point enhancement if we could. I'm going to go ahead and deal with the one that looks like to me is dispositive, but then go to that one because you need to get me off of that. Okay. At least me. Okay. I'll tell you why I believe we did not waive that. What happened is the two-point enhancement. What happened with the two-point enhancement is that they had an agreement that it was under 10 pictures, and that that was part of the statement of facts. Then they go to the hearing, and the government, for the first time, is now arguing it's over 10 points. But you just collapsed two different procedures. When you take a guilty plea, the court has to have a statement of facts sufficient to accept the guilty plea. We don't want to be having persons pleading guilty to where there's no basis of fact for it. Correct. And so there was a statement of facts agreed to for that purpose. When it comes to sentencing, the court is entitled to look at relevant conduct. And that doesn't mean that the statement of facts limits. The statement of facts is sufficient to accept the guilty plea, but the relevant conduct under when sentencing can go broader, and that's what the court did, right? Yes. You can try to address why that isn't perfectly sufficient explanation for that. I will be happy to address that. I would like to finish with whether he waived it and then move on to that, if that's all right. I'm sorry. Go ahead. Thank you.  And the choice is either you don't argue that this is wrong and then we give you three points for not accepting responsibility, or you say, okay, I'm not going to argue it's wrong and get the two points. He was given a catch-22. He was given a, if you are going to not waive this, you're going to be in a worse position. It wasn't really a conscious choice or a free choice because if he didn't agree not to discuss it, not to argue it, then he was going to be in a worse position. And that's why we don't believe it was an actual waiver. As to Judge Niemeyer's question, the statement of facts does say that this is enough to make it sufficient for the charge. But it doesn't, but what it said there is that there were less than ten pieces. It didn't say of pornography. It didn't say there are about ten pieces. There could be more or less. Read the language. What did the language actually say? Of course, he dealt it. Well, if it takes, I don't want to take all your arguments. I can pull that up and do that during my rebuttal time. But I did look at it again last night, and I know that it said less than ten. And I looked to see if there was any sort of a reservation, and there was not. What I was trying to find is that was it a limiting fact? In other words, he did no more than ten. Or did it say he did at least, or he did nine or less than ten? If he just did less than ten, that supports the claim. But when you come to sentencing, as you know, that doesn't have to be part of the facts of conviction. Ms. Vitterman, I think the record shows that his counsel specifically asked the PCR to say ten or more images. It wasn't the government. It was his lawyer. I don't believe that's correct, but I will check and address that during my rebuttal time, if that's all right with your honors. I would like to move on to — I'm sorry? AA119. Thank you. I would like to move to the five-point enhancement, which is the major part of our argument here. And that has to do with whether he satisfied the statute and the enhancement, the five-point enhancement, under the current rules. In 2016, there was an amendment to the rules, which changed — You just want us to follow the Sixth Circuit decision in Oliver. Not necessarily, but I do think the Sixth Circuit decision in Oliver sets it forward correctly. But the Fourth Circuit decision in McManus and the Fifth Circuit decision in Gross were both before the amendments, and they both had to do with intent, which is no longer what we are looking at. We are now looking at whether there is an exchange for one thing for another with a person, with a specific person. And there's no evidence at all of any of that. The evidence is that he uploaded some pictures to the Internet. It was mentioned that it was a closed upload on Snapchat. There was no understanding of what that was or no explanation of what a closed upload is. I don't even know if that means that it's not available to other people and only to him or not. I don't understand when you say not necessarily Oliver. McManus gave you two factors that are there. Oliver indicates there's another factor that deals with agreement there. Right. We agree with Oliver. What is it about that that not necessarily you would espouse for your position? No, there's nothing in Oliver that I'd espouse. You said you just want us to follow Oliver, and I'm suggesting that Oliver is a good framework for this court. I think Oliver is correct. I didn't mean to suggest otherwise. And if your honors want to just follow Oliver, that's fine, because that's the only case we have that explains what this is after the change in 2016. But that is a good framework for us, absolutely, because that is the one that talks about what happened after 2016. How would you change it within the Fourth Circuit law that you're dealing with, because you've got a recent amendment to this here, and that's really what we're talking about. I don't know if we've got cases dealing with that recent amendment there. Oliver does. I don't know if the Fifth Circuit does to a less extent. I'm trying to understand how would you change it. What do you mean when you say that doesn't – it's a framework to work with, but it's not – you seem to indicate it's not the best one, and you have a better one. No, I don't. What's the better one you have? I would follow Oliver. I just didn't want to tell your honors that you needed to follow another circuit court exactly. But I think the Oliver framework is correct. We can follow it exactly if we don't want to. It's a circuit court decision just for guidance. We don't have to follow it at all. We can go completely opposite of Oliver. Absolutely. That's what you would like us to do. I would like you to follow Oliver. Well, let me ask you this. I think Oliver is correct. Do you need – is it your contention that the government needs to identify the person with whom your client communicated? So you don't need to necessarily identify the person exactly, but there needs to be a person, and they need to know that there is this person, and whether they know his name and address is not of moment here, but whether they know that there is a person with whom he exchanged, that's important. So it can be an unidentified person, but there has to be a person. For instance, if you upload something and then you just download something else, there's no person that you have had an agreement with in that case, and there's no exchange with another person. Just because he downloaded some images and just because he uploaded some images, there's no evidence that there was any kind of agreement with somebody else, and there's no evidence that there was somebody else with whom he made this exchange. So he could have just uploaded and some people could have seen it, and then he could have downloaded something else, and there's no evidence that the person or people that he downloaded the images for had ever seen his or that had ever done it in exchange for having seen his. So the fact that he did some uploads and that he did some downloads do not mean that he had an agreement with another person to exchange those and that he actually did exchange those, which is what's required under the amendment. Is his admission that he did this to get more pornography, is that sufficient to support the valuable consideration from? If you're talking about the catch a predator thing, then no, it's not, because what happened here is that when he was arrested, he first said, in his panic at getting arrested, he first said it was inadvertent. He then said he was doing it as a catch a predator, which nobody believed. He then took that back and said, that is not true. I am addicted to porn, and I was looking at this pornography. Nobody believes, first of all, that he actually was trying to do a catch a predator. If there's a child pornographer's handbook, that would be in there to say, oh, I'm doing it to catch a predator. It's something that a lot of people say, and it's really never okay. He puts it online. If he's just addicted and that's the whole thing, he would be only downloading, but he put it online, and I think the district court found he put it online with the expectation that he would get more coming back at him. Your argument, I think, if I understand it, is the mere expectation from a site is not enough in lieu of 216 amendment that he has to have an exchange, which the commentary says is an agreement with another person to receive something back. It's subtle, but in the first case, he has an expectation from a general site that he's going to receive some in exchange, and then second, he has an agreement with someone to an exchange. Is that roughly where we are? Yes, that's exactly where we are, yes. He has to have made an agreement with another person to exchange, and there's no evidence that that happened at all. I don't know if we have to decide whether there's evidence on it. Well, maybe we do. I think we do, and there's not even a suggestion of that. The only suggestion is that or evidence or anything here in this case is that he uploaded some and he downloaded some, and there's nothing connecting the two of them, and there's nothing showing any sort of an exchange, and there's nothing showing any sort of an agreement with another person. His admission being the catch-a-predator admission? No, no, no. Oh, that he was hoping to get it? That has to go to his intent, which is specifically what the 2016 amendment changed. That what you're calling an admission that had to do with his intent, to me that might have been sufficient had it been before 2016, but the 2016 amendment specifically went to change that and to say that's not enough. That five-point enhancement is for an actual agreement and an actual exchange and not just an intent, so it no longer supports it under the amendment. The amendment actually says the defendant distributed an exchange for any valuable consideration means the defendant agreed to an exchange with another person for the specific purpose of obtaining something of valuable consideration from that other person, and we don't have any suggestion of any other person that would be. He didn't agree with anyone to exchange pornography. There's no evidence that he did exchange pornography with anyone. There's disparate acts of receiving and uploading, but nothing connecting the two of them. There's no consideration. There's no mutual understanding. There's nothing here that would satisfy the statute as now written after the 2016 amendments. There has to be more than just a generalized expectation that because of the way the online chatting systems work, there might be something that comes back in exchange. There has to actually be something that comes back in exchange, and we don't have that here. The district court, by the way, agreed that there has to be something more than that sort of generalized expectation, but the district court did say perhaps it was his goal, perhaps it was not his goal to get something back. We don't know if it was his goal, and that's what the government was arguing too, that there isn't any evidence. We don't really know whether he really meant this or not, and that's not enough for an enhancement You need to have sufficient indicia of reliability, and here there's no indicia of reliability on that statement at all. I mean, the government didn't believe it. The investigators didn't believe it. The defense took a back, said it wasn't true. The judge didn't suggest it, that he had no idea if it was true, and that's not sufficient indicia of reliability in order to have an enhancement. If there are no further questions, I will reserve the rest of my time for rebuttal. All right, thank you. Mr. Ossoff? May it please the Court, Peter Ossoff on behalf of the United States. Mr. Morehouse's sentencing guidelines were properly calculated, and his 84-month sentence consisting of a 13-month downward variance was reasonable. Mr. Morehouse raises two issues on appeal. The first I'll briefly address in regards to his enhancement, two-point enhancement under sentencing guidelines, section 2G2.2B7A. As Judge William pointed out, Mr. Morehouse waived the right to appeal this issue on multiple levels. First of all, first and foremost, there was no agreement whatsoever between the parties. There was no plea agreement. He pled straight up to an indictment. And in the joint appendix at 21 and 24, the Rule 11 colloquy, this is emphasized multiple times by the magistrate judge who took the plea, emphasizing that there was no plea agreement, no other offers made at any time to the defendant, which was confirmed by the defendant's own words and his counsel at the colloquy. What is the catch-22 position she, Ms. Biederman, contends her client was put into such that this, in fact, was maybe a withdrawal, but it wasn't really, it was kind of a coerced type thing? So, Judge Winn, I believe what she's referring to is in the statement of facts, which is in the JA at 204, in the recitation of the statement of facts in the PSR, paragraph 11 of the statement of facts said, less than 10 images depicting child pornography were observed to be on Morehouse's cellular phone. I urge the judges to look at the statement of facts and see that paragraphs 8 through 12 of the statement of facts are all in reference to the October 6, 2019 seizure. It specifically emphasized that there were less than 10 images on his cell phone at that time when agents took a look at it. However, as always, in the end of the government statement of facts, paragraph 16 of the statement of facts found in the recitation of PSR and JA 205, Morehouse further acknowledges that the foregoing statements of facts covers the elements of the offense charged, but does not describe all of his conduct relating to the offenses charged in this case. There's further no objection to paragraphs 8 or 9 in the PSR, found at JA 206, and even in the revised PSR 268, where it references additional five images from cyber tip reports and an additional image of child pornography on his HICD account. There was no deception on any part that there were additional images that were attributable to the defendant. And again, there was no agreement otherwise. This idea that the statement of facts, that one paragraph that specifically says there were less than 10 images on his cellular phone, particularly at the time of the search warrant, is just not applicable. Further, Your Honors, paragraph 16 of the statement of facts, excuse me, I already went through that part. Further, Your Honors, in defendant's own sentencing position paper at JA 62, Mr. Morehouse is withdrawing his objection to the two-level enhancement pursuant to U.S. Sentencing Guidelines Section 2G 2.2b7a. Ms. Biederman suggested that he was somehow doped into a new predicament at sentencing. This is clearly not true as evidenced from his sentencing position paper prior to the sentencing hearing where he waives his objection. And finally, at the sentencing hearing in the joint appendix at 119, defense counsel states, could we just simply say that he was in possession of 10 or more images? And that was because there was some dispute, and the defense counsel goes on at sentencing to say there was some dispute as to the specific number, but it was not in dispute that he fell within that 10 to 150 images. For those reasons, Your Honor, the 2G 2.2b7a two-point enhancement was proper. Moving on to the second enhancement, the 2G 2.2b3b, the government concedes that the McManus test was clearly established in 2013. And afterwards, in 2016, there was the 801 amendment to this particular enhancement. However, the government's position is the McManus test is still good. In fact, we know this because in the sentencing supplement to Appendix C in the amendments to 801, which both parties recite in their briefs, appellant briefs and appellee briefs, on page 17 of both briefs, actually, recite the explanatory note for the 801 and the purpose of it, where the commission juxtaposes the McManus position in a positive light with the gross Fifth Circuit gross case, which was more of an inherent reciprocity or a per se rule that they had adopted. Essentially, any defendant who basically allowed access to his child pornographic material, where people could access and exchange it, if that was sufficient enough, and this court and its forward thinking said, no, that's not okay. Just, you know, that's not a substitute for what McManus actually said. And I read here, McManus said, a thing that is expected is reasonably likely to occur. And the idea is here. And they also said, it's expected when he distributed his files on his belief that he would receive something of value in return. So McManus basically followed a proposition that the expectation of consideration is enough, and that if you put it on a site where people exchange pornography, that would be enough. But I see a subtle difference between that and the 2016, especially when you read the commentary that says, it envisions an agreement between the defendant and someone else for the exchange, specific exchange. And they changed the language from expectation to expect an exchange. And so I don't know if you accept a difference between the statements of McManus and the 2016 amendment, but it seems like there is some difference there, despite what you're reading there in the background. Your Honor, I believe there is some difference, but it's subtle.  It is subtle. I agree with that. Yes. In fact, the application note was essentially modeled after this court's ruling in McManus. There's nothing to suggest in the plain language of the application note that a contract-like meeting of the minds. What to say? What's the verb? It says that the defendant agree, isn't it? Something I don't have. Agreed to an exchange. Your Honor, the amendment reads, the application reads, the defendant distributed an exchange for any valuable consideration means the defendant agreed to an exchange with another person. Well, that's the clause that gives me pause. In other words, an agreement of an exchange with another person, whereas McManus allowed for the possibility that you have an expectation because you're putting it on a site from which you reasonably could expect a return. And, Your Honor, I would urge the court to look at, again, why the commission decided to make this amendment. And it was not to emphasize that there needs to be an exchange. Why do we have to do that if it's pretty plain in front of us what they say? Well, Your Honor, I disagree. We need to examine why they did something when they say agree with another person. McManus, as Judge Niemeyer has pointed out, is dealing more with the expectation of receipt. I mean, we do. You know, the commentary can be useful in other purposes, but it's right there in front of our face. And we are not alone, at least in terms of the other side. You had the Sixth Circuit case. They read it just that way, too. I understand, Your Honor. There's the Hamilton case out of the Fifth Circuit that went also to say there's something additional that was done here. I understand. It's pretty plain that there is a difference in McManus and the case that we have here. McManus is clearly dealing with expectation, and now we have this language for whatever. It could be for a purpose. I don't disagree. I'm not sure they intended this or whatever. But, you know, we're a court. We go by what the language says, and we don't try to go and look behind purposes of things. And you don't want us to do that because even when you bring a case, you don't – if a statute is read, you don't want us – when you're seeking to prosecute a case, you say, well, let's look at the purpose of it instead of what the language actually says. You know, I know this thing goes both ways, doesn't it? I understand, Judge White. And as a textualist, I adhere to the language of the application note, and I would urge the court to consider that if the emphasis was to be on an agreement, it could have just as – much easier and much clearer could have read the defendant agreed with another person to distribute in exchange for something of valuable consideration from that person. It doesn't. It goes on to say that there has to be – the operative word is that the defendant knowingly distributed for the specific purposes of obtaining something of value. And, again, I believe the court in McManus was the catalyst for this change from the commission. Is the Sixth Circuit in Oliver wrong about this, then? Yes, Your Honor, but – About the Fifth Circuit. Were they wrong in Hamilton about it, too? I believe they – I don't believe that the tests established in Halverson and Oliver are necessarily wrong. I do believe that the appellant's suggestion that this creates some sort of inculpatory meeting of the minds of a specific additional person. I don't think you have to go that far. It seems to me the commission was clearly intent on making a change when they took out the word expectation and said expect. More specific. In other words, there has to be a more focused specific, and the commentary explains why they made that change. And instead of an expectation by sending pornography, child pornography, up to a site where there is generally exchanging going on and expecting to receive an exchange in front of it, he puts it up and he knows that somebody's going to say, hey, that's great stuff, here's some of the stuff I have, too. That's an expectation, which could imply some kind of agreement, but it's pretty general. And so it looks to me like they were tightening down on it and saying the general expectation wasn't enough. We want a particularized expectation from an agreement with another person. That's a little tighter. I would understand and agree with that, Your Honor, and I don't see expectation in the new language. It uses the verb expect, right? No, Your Honor. I forgot. The application note, are you referring to the application note? No, I was reading the guideline. The guideline itself says, if the defendant distributed in exchange for valuable consideration but not- In exchange. In exchange. Correct. So distributed in exchange for. Correct. And the earlier one used the word expectation. Distributed for the expectation of receipt of a thing of value. So that was too general for the commission, and they said you have to distribute in exchange for. And then they explained that that means that it's distributed with an agreement with another person. I would agree with that, Your Honor. You know, it's subtle, but there's a difference. They intended some difference. I agree with you, Judge McManus. And McManus interpreted the former. And I think the two-part test that McManus touched upon, that subtle- No, McManus basically talked about a sort of subjective belief. It said to distribute his files on the belief that he would receive something of value in return. A thing that is expected is reasonably likely to occur. Your Honor- They were focusing on expectation, whereas the new rule talks about really focusing on the exchange, agreed-upon exchange. And maybe you don't agree, but that's my trouble. Your Honor, I concede, and I don't have it right at my fingertips. That may be part of the dicta in McManus, but the two-part test established in McManus is, one, knowingly made child pornography in his possession available to others by some means, and two, made his pornographic materials available for the specific purpose of obtaining something of valuable consideration. Yeah, but then they explained exactly what I said right after that. We explained right after that what that means. And we said right after that he has to have a belief that he would be receiving something of value. And then we go on even further to explain that that belief has to be a reasonable belief. Correct. And, Your Honor, I think, regardless, we meet that test here by paragraph- You do. Yes, Your Honor. That's what's so found. But the argument here today is not that you meet the McManus test. The argument today that I believe is being made is that there was a change in 2016 and that the change has not been satisfied. Well, the quote attributable to him is that he shared material in order to receive other material from unidentified users. Is that enough? Yes, it is, Your Honor. That statement, which goes to- Unfortunately, Your Honors, the record here is thin because we don't have the luxury of having a trial with a record. We essentially have the statement of facts and the adopted PSR. And that really boils down to get to the heart of this particular- But it really goes to the question, how does that show agreement? And that's kind of what we're going around in circles about. We don't like to read out words and say they are superfluous when a statute or guideline comes forth. You have a definition here that includes distribution element and the specific purpose element. But the agreed element has to mean something, too. And all well and good, it just doesn't show that. And that's essentially, I keep pointing to the Sixth Circuit. It's just guidance if we take it at best. We're not bound by those other courts. But, I mean, that seems to be- that word is in there. It has to mean something. Even the first prong of the Oliver test, Your Honor, is agreed either explicitly or implicitly to an exchange with another person under which- And it goes on from there. So what is the agreement here? Well, Your Honor, I believe that it's agreed to an exchange, not necessarily- Another person. With another person. And that was, again, getting back to the reason for the change was to narrow it down. So rather than just saying somebody is culpable if they're distributing, putting stuff out there, they are distributing to a person. Which we know that Morehouse did that by his own admissions. He explained that he shared the aforementioned videos and images in order to receive other child pornographic images and videos from the unidentified users. He never contested the statement. Is that an admission or not? Yes, Your Honor. It's absent- I mean, I do admit, again, that it would be nice if we had additional evidence in the record. Just read that again. That's your best quote, right? Just read that again so I can focus on it. Morehouse further explained that he shared the aforementioned videos and images in order to receive other child pornographic images and videos from the unidentified users. He specifically- Consistent with McManus, where you have a reasonable expectation of a return. And, Your Honor, I would say- The question is, is that enough to be in agreement with another person? I would- Honestly, Your Honor, I would say that the fact that he did successfully receive images of child porn back is evidence that they're of an agreement of some sort. What that agreement is, is unclear. It's not an agreement they did as part of their practice. It's a site where you exchange various things, but there's no agreement between the defendant and another person for the exchange. And that's heightened in culpability, I suppose. At least that's where the guidelines want to go to. And if I understand your question or statement, Your Honor, correctly, that, again, goes to the heart of the matter here, which McManus was forward thinking and abolishing that kind of open, free, peer-to-peer file sharing where you're not accountable for what somebody might just send you because your stuff is available. It added that level of culpability. It seems to me you are advocating a unilateral agreement here. It can satisfy this. And if that's so, the question is, how is that different from expectation of receipt? I think, Your Honor, that the expectation that the language agreed to an exchange is unilateral. I think it's different from just a pure expectation because it has to be for, in this case, it has to be for a specific purpose of obtaining something of value, right? You can't just put something out there and hopefully expect something at that. It has to be purposeful in order to receive it. When you said there was an exchange, where in the record does it indicate there was, in fact, an exchange? Again, Your Honor, point to paragraph 11 that Morehouse had this specific intent. It doesn't have to be successful. There's nothing in the— Expectation. That's what we all agree on. He had that expectation. At least McManus. The problem is you have a 2016 amendment. Your Honor, I see that my time is almost up. May I close? Please respond. For the reasons, Your Honor, the United States respectfully requests this court stand by its forward-thinking precedent, reaffirm the pioneering test that's set forth in McManus on which the commission modeled its 801 amendment, and affirm the judgment of the district court. Alternatively, should the court decide the McManus test requires some post-801 tuning, the United States asks the court to find sufficient evidence in the record, as did the court below, to apply the 2G2.2B3B enhancement based on paragraph 11 of the adopted PSR and Mr. McManus's unambiguous admissions that he distributed for the purpose of receiving child pornography in return. Thank you, Your Honor. All right. Thank you, Mr. Ossoff. Ms. Peterman, do you have some rebuttal? Yes, I just have a couple of minutes. I'm just going to start with at the end of what the government was saying, and we agree with what he said at the end, that they were abolishing sort of an open share and that he said that you have to agree to an exchange, but he left out the with another person. There actually has to be an agreement with another person to exchange. We do not have that here. Just to give him his argument, the question is whether I'm swayed or not is another question, but his argument is that there are other persons on that site. I mean, they're not animals and they're not robots. There are other persons on that site, and that's a reasonable assumption on his part, so that when he exchanges with unidentified individuals, that's another person. That's his argument, I think. Well, you don't know that he's exchanged with other unidentified individuals. There is no connection between what he uploaded and what he downloaded. We don't know if he downloaded from the same sites that he uploaded to. We don't know where he got that from. We don't know if there was any sort of an exchange, and there is most certainly not an agreement with another person to that exchange. Now, there was an agreement possibly with the website that he was going to put these up there, but there was absolutely no agreement here with another person and that those two people exchanged. There's no evidence that anyone that saw his photos then put up any photos that he then downloaded, and there's no evidence that there was an agreement and that it was because of those things. I will point out that the government did quote part of a sentence that I thought should be read in the whole, and that is when he talked about how the defendant distributed an exchange for any valuable consideration, it then goes on to say, the amendment further explains in the accompanying application note that this means the government agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as the child pornographic material, preferential access to child pornographic material, or access to a child. And there's absolutely no evidence of that. Where's that from? That is from the amendment. The notes? Yes. Okay. Yes. The Sentencing Commission specifically discussed the Fourth Circuit's case in McManus, and this is under the explanation of that. And that's what we don't have here, and it's clear we don't have that here. For those reasons, we would ask that you reverse and send back for resentencing. All right. Thank you, counsel. For us, this is the end of the week, and we go home, but we thank you for your arguments. We would normally come down and shake your hands. It's a wonderful practice that goes back to Judge Parker in the 1930s, and it's been sort of an identifying icon for the court, and we hate to suspend it, but the circumstances, we're still under the protocols, and so next time you come, we'll be sure to shake your hand and thank you. But in any event, thank you for your arguments, and we'll adjourn, I guess, to this afternoon, or what's the next court? Anyway, adjourn court for this session. Thank you. Thank you, Your Honor. This honorable court stands adjourned, signing by Prosecutor of the United States and this honorable court.
judges: Paul V. Niemeyer, James Andrew Wynn, Henry F. Floyd